STATE OF NORTH CAROLINA v. MARSHALL EUGENE BLACKMON

No. COA10-417

(Filed 7 December 2010)

**1. Appeal and Error— preservation of issues—failure to renew motion to dismiss**

Defendant's argument that the trial court erred by denying his motion to dismiss the charges against him was not reviewed. Defendant failed to renew his motion at the close of all evidence and, therefore, waived appellate review of this issue.

**2. Constitutional Law— effective assistance of counsel— Strickland test**

Defense counsel's failure to renew his motion to dismiss the charges of felonious breaking and entering and larceny after breaking and entering at the close of all evidence did not constitute ineffective assistance of counsel. As the State presented sufficient evidence that defendant was the perpetrator of the offenses and that defendant obtained possession of the property

dishonestly, a second motion to dismiss would not have altered the result in this case and defendant could not satisfy the second prong of the test set forth in *Strickland*, 466 U.S. 668.

**3. Burglary and Unlawful Breaking or Entering— larceny breaking and entering—inconsistent verdicts—not mutually exclusive**

The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict based on his contention that the jury verdicts were logically inconsistent. Based on *Mumford*, 364 N.C. 394, defendant's conviction of larceny after breaking and entering was merely inconsistent with the trial court's declaration of a mistrial on the felonious breaking and entering charge because the jury was deadlocked, but was not mutually exclusive.

Appeal by defendant from judgments entered 7 January 2010 by Judge Timothy L. Patti in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 September 2010.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Grady L. Balentine, Jr., for the State.*

*William B. Gibson, for defendant-appellant.*

JACKSON, Judge.

Marshall Eugene Blackmon ("defendant") appeals his 7 January 2010 convictions for felonious larceny and being an habitual felon. For the reasons stated herein, we hold no error.

On 13 June 2008, Sonya Sullivan ("Sullivan") left her fifteen-year-old son, Jaccuehas, and eight-year-old daughter, Carrie, alone in her house while she went to work. At approximately 12:00 p.m., the children heard a loud noise coming from downstairs. They barricaded themselves in a bedroom and hid in a closet. Jaccuehas called 911 at 12:29 p.m. and reported that someone had broken into the house. The police arrived shortly after the call was made.

Sullivan arrived home at approximately 1:00 p.m. Sullivan's computer and television were on the grass outside the home; her camcorder, PlayStation 2, and some video games were missing. The electricity meter had been pulled off the wall, the glass window in the entry door was broken, and a large rock was on the kitchen floor.

Crime scene specialists arrived at the house and recovered several fingerprints, only one of which was determined to be of "AFIS quality[.]" That print, found on the computer tower sitting outside the house, matched defendant's left ring finger. Sullivan told police that she had never met defendant.

Defendant was indicted on three counts: felonious breaking and entering, pursuant to North Carolina General Statutes, section 14-54(a); larceny after breaking and entering, pursuant to North Carolina General Statutes, section 14-72(b)(2); and being an habitual felon, pursuant to North Carolina General Statutes, section 14-7.1. N.C. Gen. Stat. §§ 14-54(a), -72(b)(2), -7.1 (2007).

At his 4 January 2010 trial, defendant testified that, on 13 June 2008, he had walked from his house to a nearby Food Lion supermarket in order to buy diapers and beer. Defendant had used a "cut through" behind Sullivan's town home as a shortcut to the supermarket. Defendant claimed that his fingerprint was on the computer because he had "turned it over to check out the jacks" when he had noticed it on his way home. Defendant testified that he believed the computer to have been discarded but that he decided not to take it because it had been sitting in the heat and probably was damaged. Defendant further testified that he did not see any damage to the town home nor did he hear sirens or see police.

At the close of the State's evidence, defendant moved to dismiss the case in its entirety. The trial court denied the motion. Defendant then presented evidence and did not renew his motion to dismiss at the close of all evidence.

On 6 January 2010, defendant was found guilty of the felonious larceny charge and of being an habitual felon, but the trial court declared a mistrial as to the breaking or entering charge because the jury was deadlocked. Defendant moved for judgment notwithstanding the verdict based upon the inconsistent result reached by the jury, which the trial court denied. Defendant was sentenced to between 121 and 155 months in jail and ordered to pay restitution of $2,057.25. Defendant appeals.

[1] Defendant first argues that the trial court erred by denying his motion to dismiss the charges against him. Because defendant failed to preserve this issue, we do not review it.

Our Rules of Appellate Procedure require a defendant in a criminal case to make his motion to dismiss at a specified time in order to preserve the issue for appeal:

> If a defendant makes such a motion after the State has presented all its evidence and . . . that motion is denied and the defendant then introduces evidence, defendant's motion for dismissal . . . is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.

N.C.R. App. P. 10(a)(3) (2009). Although Rule 10 contradicts North Carolina General Statutes, section 15A-1446(d), which provides that some errors "may be the subject of appellate review even though no objection, exception or motion has been made in the trial division[,]" our Supreme Court has held that Rule 10 controls. *State v. Stocks*, 319 N.C. 437, 439, 355 S.E.2d 492, 493 (1987) ("To the extent that N.C.G.S. 15A-1446(d)(5) is inconsistent with N.C.R. App. P. 10(b)(3),[1] the statute must fail.").

Here, defendant moved to dismiss the charges at the close of the State's evidence but failed to renew the motion at the close of all evidence. Therefore, in accordance with Rule 10, defendant has waived appellate review of this issue.

**[2]** Defendant next argues that his attorney's failure to move to dismiss the charges at the close of all evidence constitutes a deprivation of his right to effective counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. We disagree.

The United States Supreme Court has set forth the test for determining whether a defendant received constitutionally ineffective assistance of counsel, which our Supreme Court expressly adopted in *State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985). Pursuant to the two-part test,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). With respect to the first element, "a court must indulge a

---

1. The subsection of Rule 10 cited by the *Stocks* Court is now subsection (a)(3), pursuant to our revised Rules of Appellate Procedure that took effect on 1 October 2009.

STATE v. BLACKMON

[208 N.C. App. 397 (2010)]

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 80 L. Ed. 2d at 694-95 (citation and internal quotation marks omitted). The second element of the *Strickland* test requires that the defendant show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 80 L. Ed. 2d at 698. Our Supreme Court also has noted that defendants who seek to show ineffective assistance of counsel must satisfy both prongs: "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249. Here, defendant urges us to hold that his trial counsel's failure to renew the motion to dismiss constitutes ineffective assistance. However, we do not think that renewing the motion would have affected the outcome of the case.

The State, in order to survive a motion to dismiss, must present substantial evidence of each element of the crimes charged and of defendant's identity as the perpetrator. *See State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). The trial court should concern itself only with the sufficiency of the evidence, not its weight. *State v. Mercer*, 317 N.C. 87, 96-97, 343 S.E.2d 885, 891 (1986). The evidence need not rule out the possibility of innocence. *State v. Tirado*, 358 N.C. 551, 582, 599 S.E.2d 515, 536 (2004). However, if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed. This is true even though the suspicion aroused by the evidence is strong." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983) (internal citations omitted). When ruling on a motion to dismiss, the trial court must give the State the benefit of "every reasonable inference" presented by the evidence. *State v. Cross*, 345 N.C. 713, 717, 483 S.E.2d 432, 434 (1997).

In the case *sub judice*, defendant specifically challenges the State's evidence as to two points. First, he argues that the State did not present sufficient evidence to establish his identity as the perpetrator of the crime charged beyond reasonable doubt. Defendant also contests the third element of the doctrine of recent possession—"that defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that he obtained possession honestly"—upon which the State relied to prove the larceny charge. *State v. Osborne*, 149 N.C. App. 235, 238, 562 S.E.2d 528, 531 (citation omitted), *aff'd*, 356 N.C. 424, 571 S.E.2d 584 (2002) (per curiam).

Our Supreme Court has held that

> testimony by a qualified expert that fingerprints found at the scene of the crime correspond with the fingerprints of the accused, when accompanied by substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed, is sufficient to withstand motion for nonsuit and carry the case to the jury.

*Cross*, 345 N.C. at 717, 483 S.E.2d at 435 (quoting *State v. Miller*, 289 N.C. 1, 4, 220 S.E.2d 572, 574 (1975)) (emphasis removed). In some cases, the circumstances are such that fingerprint evidence alone is sufficient to withstand a motion to dismiss. *See State v. Williams*, 95 N.C. App. 627, 628-29, 383 S.E.2d 456, 457 (1989) (holding that fingerprints on both sides of window of room with missing television constituted sufficient evidence to submit case to jury); *State v. Bradley*, 65 N.C. App. 359, 362, 309 S.E.2d 510, 512 (1983) (holding that fingerprints in non-public portion of building where defendant was not an employee support reasonable inference of guilt and submission of case to jury).

In the instant case, the State presented an "AFIS quality" fingerprint taken from the computer tower that matched defendant's print. The computer tower was located outside Sullivan's house after having been removed from it. The State also presented substantial circumstantial evidence as to both the possessory and the identity elements. Officer Bradley Edwards testified that the computer equipment was in full view of Sullivan's back door and that if someone were to inspect the equipment while it was there, he would be able to see the broken glass in the back door. Sullivan testified that there was no path behind her house, just "a wall and woods," "not a sidewalk." Sullivan also told police that she did not know defendant and that he did not have permission to be at her house.

Accordingly, a second motion to dismiss would not have altered the result in this case. The State presented sufficient evidence "that a reasonable mind might accept as adequate to support" the conclusion that defendant was the perpetrator and that defendant obtained possession of the property dishonestly. *Smith*, 300 N.C. at 78, 265 S.E.2d at 169. Defendant, therefore, cannot satisfy the second prong of the *Strickland* test, because his counsel's failure to renew his motion to dismiss was not the but—for cause of the result in the case.

**[3]** Defendant's third contention is that the jury verdicts are logically inconsistent and that the trial court should have granted his motion for judgment notwithstanding the verdict. We disagree.

When this Court has addressed the issue of inconsistent verdicts, it rarely has set forth its standard of review. However, the majority of those cases appears to have employed a *de novo* review. *See, e.g., State v. Shaffer*, 193 N.C. App. 172, 177-78, 666 S.E.2d 856, 859-60 (2008). As discussed *infra*, if the inconsistent verdicts are determined to be merely inconsistent, rather than mutually exclusive, then the verdicts will stand so long as the State has presented substantial evidence as to each element of the charges. *State v. Mumford*, 364 N.C. 394, 400, 699 S.E.2d 911, 915, (2010) (citing *State v. Toole*, 106 N.C. 564, 566, 11 S.E. 168, 169 (1890)).

Our Supreme Court has revisited and clarified the law with respect to inconsistent and contradictory verdicts. *See id.* The defendant in *Mumford* was convicted of felony serious injury by vehicle, pursuant to North Carolina General Statutes, section 20-141.4(a3), but was found not guilty of driving while impaired, pursuant to North Carolina General Statutes, section 20-138.1. *Id.* at 397, 699 S.E.2d at 914. In order to be convicted of felony serious injury by vehicle, a defendant must be "engaged in the offense of impaired driving under G.S. 20-138.1 or 20-138.2[.]" N.C. Gen. Stat. § 20-141.4(a3)(2) (2007). The defendant in that case appealed his convictions as mutually exclusive. *Mumford*, 364 N.C. at 398, 699 S.E.2d at 914.

This Court reversed the *Mumford* defendant's conviction, holding that the conviction was both "legally inconsistent and contradictory[.]" *Id.* Our Supreme Court then reversed this Court and offered guidance as to the legal "distinction . . . between verdicts that are merely inconsistent and those which are legally inconsistent *and* contradictory." *Id.*

According to our Supreme Court, inconsistent verdicts fall into one of two categories. First, some verdicts are inconsistent only.

These verdicts "represent[] an apparent flaw in the jury's logic[,]" such as in the *Mumford* case when "presumably, a finding of guilt in the greater offense would establish guilt in the lesser offense." *Id.* at 400, 699 S.E.2d at 915. The second category consists of verdicts that are inconsistent because they are mutually exclusive in that "a verdict purports to establish that the [defendant] is guilty of two separate and distinct criminal offenses, the nature of which is such that guilt of one necessarily excludes guilt of the other." *Id.* (citation and internal quotation marks omitted) (alteration in original).

Inconsistencies, the Court concluded, are "permissible, and not . . . legally contradictory, as long as there was sufficient evidence to support the guilty verdict." *Id.* The Court reasoned that, "because each count of an indictment is, in fact and theory, a separate indictment," juries may return inconsistent verdicts, "as long as there was sufficient evidence to support the guilty verdict." *Id.* (citing *State v. Toole*, 106 N.C. 564, 566, 11 S.E. 168, 169 (1890)) (internal quotation marks omitted).

The *Mumford* Court further held that consistency in verdicts is not necessary, noting that inconsistencies "may have been the result of compromise, or of a mistake on the part of the jury . . . [b]ut verdicts cannot be upset by speculation or inquiry into such matters." *Id.* at 399, 699 S.E.2d at 915 (quoting *Dunn v. United States*, 284 U.S. 390, 394, 76 L. Ed. 356, 359 (1932)). The Court explained that

> [t]he rule that the defendant may not upset [an inconsistent] verdict embodies a prudent acknowledgment of a number of factors. First . . . inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense— should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the

**STATE v. BLACKMON**

[208 N.C. App. 397 (2010)]

Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Id.* at 400, 699 S.E.2d at 915 (quoting *United States v. Powell*, 469 U.S. 57, 57-58, 83 L. Ed. 2d 461, 463-64 (1984)) (alterations in original). Therefore, in accordance with *Mumford*, inconsistency alone will not lead to a new trial for a defend-ant; *only* verdicts that are mutually exclusive require relief. *Id.*

In the instant case, defendant received verdicts that are inconsistent but not mutually exclusive. Here, as in *Mumford*, defendant was charged with an offense that includes within it a second statutorily-defined offense. *See* N.C. Gen. Stat. § 14-72(b)(2) (2007) (Larceny becomes a felony if "[c]ommitted pursuant to a violation of G.S. . . . 14-54 [breaking or entering.]"); *Mumford.* N.C. at 394-95, 699 S.E.2d at 912. ("To be convicted under N.C.G.S § 20-141.4(a3), felony serious injury by vehicle, a person must be engaged in the offense of impaired driving under G.S. 20-138.1 or G.S. 20-138.2.") (citation and internal quotation marks omitted). The *Mumford* Court noted that the "larger" offense "does not require a *conviction* of [the "smaller" offense] . . . but only requires a finding that the defendant was engaged in the conduct described under either of [the] offenses." *Mumford*, 364 N.C. at 401, 699 S.E.2d at 916 (emphasis in original).[2] Based upon *Mumford*, we hold that defendant's convictions are merely inconsistent, rather than mutually exclusive. Because, as discussed *supra*, the State presented substantial evidence as to each element of the charged offenses, the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict.

No error.

Judges ELMORE and THIGPEN concur.

---

2. We note that the Court in *Mumford*, 364 N.C. at 402, 699 S.E.2d at 916 specifically overruled two prior cases very similar to the instant case. *See State v. Perry*, 305 N.C. 225, 287 S.E.2d 810 (1982) (affirming the decision of this Court to vacate the defendant's sentence for felonious larceny when the defendant was found guilty of felonious larceny but acquitted of breaking or entering) and *State v. Holloway*, 265 N.C. 581, 144 S.E.2d 634 (1965) (per curiam) (ordering a new trial when the defendant was found guilty of felonious larceny but acquitted of breaking or entering).